UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION -- LEXINGTON

| | |
|---|---|
| JAMES T. JOHNS, | CIVIL ACTION NO. 5:14-cv-237-KKC |
| **Plaintiff,** | |
| | |
| V. | MEMORANDUM |
| | OPINION AND ORDER |
| | |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY, | |
| **Defendant.** | |

This matter is before the Court for consideration of cross-motions for summary judgment. (DE 10; DE 11). The plaintiff, James Johns, brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial relief of an administrative decision of the Commissioner of Social Security denying his claim for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Court, having reviewed the record, will affirm the Commissioner's decision as it is supported by substantial evidence and was decided by the proper legal standards.

## I.    OVERVIEW OF THE PROCESS

The Social Security Act and corresponding regulations provide that the administrative law judge ("ALJ") must follow a five-step sequential process in determining whether a claimant has a compensable disability. 20 C.F.R. § 404.1520(a)(4); *see also Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 652 (6th Cir. 2009) (describing the administrative process). The five steps, in summary, are as follows:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or

mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.  If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers*, 582 F.3d at 652 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 404.1520(b)–(g)). If, at any step in the process, the ALJ concludes that the claimant is or is not disabled, the ALJ can then complete the "determination or decision and [the ALJ] do[es] not go on to the next step." 20 C.F.R. § 404.1520(a)(4).

Through the first four steps of the analysis, the burden of proof is on the claimant to show that he is disabled; if the ALJ reaches step five without finding that the claimant is disabled, the burden of proof shifts to the Commissioner. *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011). In order for the claimant to satisfy his burden of proof, he must provide sufficient facts to find in his favor. *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 396 (6th Cir. 2010).

## II.    PROCEDURAL BACKGROUND AND THE ADMINISTRATIVE DECISION

Johns filed his claim for SSI and DIB on April 14, 2011, alleging an onset date of March 30, 2011. (Tr. at 160, 162.) The agency denied his application initially and on reconsideration. (Tr. at 65, 73, 89, 102.) Johns requested review by an ALJ, and the ALJ held a hearing on March 15, 2013. (Tr. at 26–56.) The ALJ subsequently issued an unfavorable decision on March 28, 2013. (Tr. at 11–19.)

2

At the time the ALJ rendered his decision, Johns was forty-eight years old. (Tr. at 29.) He has a high school education and previously worked as a lab technician, line operator, and grocery store worker. (Tr. at 17, 30.) He alleges disability due to "[p]roblems with breathing, left foot, left shoulder, [and] degenerative disc disease." (Tr. at 59, 67.) Johns meets the insured status requirements of the Social Security Act through September 30, 2015. (Tr. at 13.)

At the first step, the ALJ found that John has not engaged in any substantial gainful activity since the alleged onset date of March 30, 2011. (Tr. at 13.) At the second step, the ALJ concluded that Johns has the following severe impairments: "degenerative disc disease of the lumbar spine with possible spinal stenosis; chronic obstructive pulmonary disease; degenerative joint disease of the left foot and shoulder." (Tr. at 13.) At the third step, the ALJ found that Johns does not have an impairment or combination of impairments that meets or medically equals in severity any of the listed impairments. (Tr. at 14.)

After completing step three, the ALJ reviewed the record to determine Johns's residual functional capacity ("RFC"). RFC assesses a claimant's maximum remaining capacity to perform work-related activities despite the physical and mental limitations caused by the claimant's disability. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  In finding Johns's RFC, the ALJ considered all symptoms in light of the objective medical evidence and other relevant evidence, including the following: (1) daily activities; (2) location, duration, frequency, and intensity of symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication; (5) additional treatment; (6) additional measures used to relieve symptoms; and (7) other factors concerning functional limitations and restrictions due to symptoms.  20 C.F.R. §§ 404.1529, 416.929;

3

SSR 96-4p, 1996 WL 374187 (July 2, 1996); SSR 96-7p, 1996 WL 374186 (July 2, 1996).
The ALJ also considered the relationship between Johns and the doctors providing medical
opinions; the supportability and consistency of the medical opinions with the entirety of
evidence on the record; medical specialization; and other opinion evidence.   20 C.F.R.
§§ 404.1527, 416.927; SSR 06-3p, 2006 WL 2329939 (Aug. 9, 2006); SSR 96-2p, 1996 WL
374188 (July 2, 1996); SSR 96-5p, 1996 WL 374183 (July 2, 1996); SSR 96-6p, 1996 WL
374180 (July 2, 1996).

The ALJ determined that, based on the medically determinable evidence, Johns has
the RFC to perform less than the full range of sedentary work. (Tr. at 14.) The ALJ noted
that Johns has the following exertional and non-exertional limitations:

> He is able to occasionally lift or carry 20 pounds and frequently
> lift or carry 10 pounds; he is able to stand and/or walk for 2
> hours in an 8-hour period; he is able to sit for 6 hours in an 8-
> hour period; he can frequently climb ramps or stairs; balance,
> stoop, and kneel. He can occasionally climb ladders, ropes and
> scaffolds and occasionally crouch and kneel. He needs to avoid
> concentrated exposure to vibration, fumes, odors, dusts, gases,
> poor ventilation and hazards.

(Tr. at 14.)

The ALJ continued to the fourth step and asked the vocational expert ("VE")
whether a hypothetical individual with Johns's age, education, work experience, and RFC
could perform any of Johns's prior jobs. (Tr. at 51–52.) The VE testified that this
hypothetical individual could not perform any of Johns's previous work. (Tr. at 52.) The
ALJ moved to the fifth step and asked the VE whether this hypothetical individual could
perform any work in the regional or national economy. (Tr. at 52.) The VE stated that this
hypothetical individual could perform the following jobs under the *Dictionary of
Occupational Titles* ("*DOT*"): information clerk, factory helper, and hand packager. (Tr. at
52–53.) The ALJ, therefore, found Johns not disabled. (Tr. at 18–19.)

4

The ALJ's decision that John was not disabled from March 30, 2011 through March 28, 2013 became the final decision of the Commissioner when the Appeals Commission subsequently denied Johns's request for review on May 21, 2014. (Tr. at 1–3.) Johns has exhausted his administrative remedies and filed a timely action in this Court. This case is now ripe for review under 42 U.S.C. § 405(g).

## III.   GENERAL STANDARD OF REVIEW

The decision of the Commissioner must be affirmed unless the ALJ applied the incorrect legal standards or the ALJ's findings are not supported by substantial evidence. *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604 (6th Cir. 2009). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (internal quotations omitted). When reviewing the decision of the Commissioner, courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See Lindsley*, 560 F.3d at 604–05. Courts must look at the entire record, and "may not focus [its] decision entirely on a single piece of evidence, and disregard other pertinent evidence." *Sias v. Sec'y of H.H.S.*, 861 F.2d 475, 479 n.1 (6th Cir. 1988) (quoting *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978)). The court must affirm the Commissioner's decision so long as it is supported by substantial evidence, even if the court might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).

## IV.   ANALYSIS

On appeal, Johns presents the following issues for review: (1) whether the ALJ erred in analyzing examining physician Dr. Jared Madden's medical opinion report; (2) whether the ALJ properly evaluated Johns's MRI results; and (3) whether the ALJ should have

5

credited the medical opinion report from Dr. Barry Burchett more than Dr. Madden. (DE 10 Pl.'s Mot. for Summ. J. at 4–10.) All three of these issues challenge the ALJ's analysis pursuant to the guidelines in 20 C.F.R. § 404.1527.

Section 404.1527 outlines the requirements for evaluating medical opinion evidence. Subsection C notes that the ALJ will evaluate every medical opinion and prescribes guidelines for determining the amount of weight any opinion should receive. 20 C.F.R. § 404.1527(c). Factors relevant to the weight of an opinion include: (1) whether the physician examined the claimant ("examining physician"); (2) whether the physician regularly treats the claimant and has an ongoing treatment relationship ("treating physician"); (3) whether medical evidence supports the physician's opinion ("supportability"); (4) whether the physician has provided consistent opinions concerning a claimant's alleged disabilities ("consistency"); (5) whether the physician is a specialist in the field related to the claimant's alleged disabilities ("specialization"); and (6) other factors evident in the medical records ("other factors"). *Id.* Importantly, the ALJ must evaluate the record as a whole in connection with "other sources" including testimonial and anecdotal evidence. *Engebrecht v. Comm'r of Soc. Sec.*, 572 F. App'x 392, 397–98 (6th Cir. 2014) (citing 20 C.F.R. § 404.1513). It is not necessary, however, for the ALJ to use to word "weight" in his or her analysis of the relevant factors.

### 1. The ALJ did not err in analyzing Dr. Madden's medical opinion report.

Johns asserts that the ALJ did not properly review Dr. Madden's medical report for several reasons. (DE 10 Pl.'s Mot. for Summ. J. at 5–9.) Johns argues that the ALJ should have given more weight to Dr. Madden's determination of Johns's RFC. (DE 10 Pl.'s Mot. for Summ. J. at 5–9.) Johns also contends that the ALJ did not properly credit Dr. Madden's interpretation of Johns's MRI. (DE 10 Pl.'s Mot. for Summ. J. at 7.) Finally, he

claims that the ALJ wrongly interpreted Dr. Madden's reference to "somatic dysfunction." (DE 10 Pl.'s Mot. for Summ. J. at 8.) These alleged errors, however, do not establish that the ALJ's decision is based upon an incorrect legal standard or a lack of substantial evidence. *See Lindsley*, 560 F.3d at 604.

First, Dr. Madden's RFC determination is not automatically entitled to significant weight. Dr. Madden is an examining physician, not a treating physician. Therefore, Dr. Madden's opinion is not entitled to the "treating physician rule." *See Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 723 (6th Cir. 2014). The ALJ also detailed Dr. Madden's findings (Tr. at 6), concluded that Dr. Madden's findings deserved "[l]ittle weight" (Tr. at 7), and explained why he gave greater weight to other medical opinion evidence (Tr. at 7). Notably, the ALJ determined that the "supportability" and "consistency" factors identified in 20 C.F.R. § 404.1527(c) did not substantiate Dr. Madden's findings. (Tr. at 7.) And the ALJ did not need to credit Dr. Madden's determination of Johns's RFC because RFC is an *administrative* finding of an individual's ability to perform work-related activities that is explicitly reserved for the Commissioner. *See* 20 C.F.R. § 404.1545(a); SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); *see also Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002) (holding that RFC is not meant to describe physical maladies, but residual abilities). Therefore, the ALJ did not err in assigning little weight to Dr. Madden's determination of Johns's RFC.

Second, Dr. Madden's interpretation of Johns's MRI is not the only medical opinion evidence in the record. Dr. Richard Scalf prepared an MRI report that detailed the findings and impression of Johns's MRI results. (Tr. at 283.) The ALJ did not err in giving more weight to Dr. Scalf's findings than Dr. Madden's findings, especially because the ALJ concluded that Dr. Madden did not perform the MRI, is not Johns's treating physician, and

did not provide a conclusion of Johns's abilities that is supported by, or consistent with, the medical record evidence. *See* 20 C.F.R. § 404.1527(c).

Finally, Dr. Madden's usage of the term "somatic dysfunction" does not automatically entitle Johns to a disability determination. Although "somatic dysfunction" means "an impaired or altered function of the somatic bodywork system including skeletal system" (DE 10 Pl.'s Mot. for Summ. J. at 8), the ALJ may still properly discount any and all medical opinion evidence that does not meet the relevant factors pursuant to 20 C.F.R. § 404.1527(c). The ALJ properly analyzed how much weight to give to Dr. Madden's opinion, *id.*; and Dr. Madden's usage of a specific term of art does not mean that his medical opinion suddenly warrants greater weight.

### 2. The ALJ properly analyzed Johns's MRI results.

Johns properly notes that an ALJ is not authorized to independently interpret the results of an MRI. (*See* DE 10 Pl.'s Mot. for Summ. J. at 7–8.) "The ALJ must not substitute his own judgment for a doctor's conclusion without relying on other medical evidence or authority in the record." *Booth v. Comm'r of Soc. Sec.*, No. 1:06-CV-122, 2008 WL 744 230, at *13 (S.D. Ohio Mar. 19, 2008) (citing *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000)). But here, the ALJ did not independently evaluate Johns's MRI. Both Dr. Madden and Dr. Scalf interpreted Johns's MRI results. (Tr. at 283, 321–26.) Therefore, the guidelines pursuant to 20 C.F.R. § 404.1527(c) provide guidance for which medical opinion the ALJ should credit. Both Dr. Madden and Dr. Scalf examined Johns; neither Dr. Madden nor Dr. Scalf is Johns's treating physician; Dr. Madden is an osteopathic physician and Dr. Scalf is a diagnostic radiologist; Dr. Madden's conclusion was not supported by other credible medical evidence in the record but Dr. Scalf's findings were supported by other credible medical evidence in the record. 20 C.F.R. § 404.1527(c). Therefore, the ALJ's conclusion to

8

give Dr. Madden's analysis of Johns's MRI results little weight is based upon a correct legal standard and is supported by substantial evidence. *See Lindsley*, 560 F.3d at 604.

    *3. The ALJ did not err in giving greater weight to Dr. Burchett's medical opinion than to Dr. Madden's medical opinion.*

Johns contends that the ALJ should not have given greater weight to Dr. Burchett's medical opinion than to Dr. Madden's medical opinion. (DE 10 Pl.'s Mot. for Summ. J. at 5–9.) Notably, Johns claims that the ALJ's failure to use the word "weight" when analyzing Dr. Burchett's medical opinion is "a significant error in this decision and requires remand of the matter." (DE 10 Pl.'s Mot. for Summ. J. at 7.)

Here, the ALJ detailed the findings of both Dr. Burchett's and Dr. Madden's examination of Johns. (Tr. at 16–17.) The ALJ also identified the other medical evidence in the record relevant to determining the amount of weight to give the medical opinion evidence. (Tr. at 14–17.) Then, the ALJ weighed the medical opinion evidence. (Tr. at 17.) The ALJ determined that Dr. Madden's opinion should be given "[l]ittle weight" and gave weight to Dr. Burchett's opinion because the ALJ used Dr. Burchett's opinion to formulate Johns's RFC and Johns's RFC limitation. (Tr. at 14–17.)

Johns is correct that the ALJ did not use the word "weight" when analyzing Dr. Burchett's opinion; however, failure to use the word "weight" does not require remand. The regulations require an ALJ to "weigh" medical opinions. 20 C.F.R. § 404.1527(c). The regulations also provide guidance for the proper methodology to weigh a medical opinion. *Id.* The regulations, however, do not require a particular vocabulary. *See id.* Although the ALJ did not use the word "weight," it is clear that the ALJ *weighed* Dr. Burchett's medical opinion evidence. The ALJ determined the examining relationship, the supportability of Dr. Burchett's conclusions, and the consistency of Dr. Burchett's medical opinion with the record as a whole. (Tr. at 16–17.) The ALJ then used Dr. Burchett's medical opinion to

formulate Johns's RFC. (Tr. at 14–17.) Clearly the ALJ weighed Dr. Burchett's medical opinion according to the guidance provided under the regulations. *See* 20 C.F.R. § 404.1527. Therefore, the ALJ's determination to give Dr. Burchett's medical opinion evidence more weight than Dr. Madden's medical opinion evidence is based upon a correct legal standard and is supported by substantial evidence. *See Lindsley*, 560 F.3d at 604.

## V. CONCLUSION

For the reasons set forth above, the Court hereby **ORDERS** as follows:

1.  Plaintiff's motion for summary judgment (DE 10) is **DENIED**;

2.  The Commissioner's motion for summary judgment (DE 11) is **GRANTED**;

3.  The decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g) as it was supported by substantial evidence and was decided by proper legal standards; and

4.  A judgment consistent with this Memorandum Opinion and Order will be entered contemporaneously.

Dated September 28, 2015.

*Karen K. Caldwell*

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY